UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARRYL LEE HENDERSON,                    )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )          No. 4:17 CV 2555 JMB
                                         )
ROBERT L. WILKIE,[1] Secretary           )
Department of Veterans Affairs,          )
                                         )
              Defendant.                 )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Robert L. Wilkie's Motion to Dismiss or,

Alternatively, for Summary Judgment (ECF No. 14). Plaintiff Darryl Lee Henderson

("Plaintiff") filed opposition thereto and the issues are fully briefed. The parties consented to the

jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons set forth below,

the Court grants Defendant's Motion for Summary Judgment.

Plaintiff brings this action *pro se*, alleging that his employer, the Department of Veterans

Affairs ("VA"), unlawfully discriminated against him in his employment on account of his race,

color, gender, and disability. Plaintiff brings his claims pursuant to Title VII and the

Rehabilitation Act of 1973, alleging that the VA failed to promote him and to accommodate his

disability, retaliated against him for prior Equal Employment Opportunity ("EEO") activity,

subjected him to a hostile work environment, and harassed him. Plaintiff uses the "Employment

Discrimination Complaint" form and lists the following as conduct complained of: failure to

---

[1] Robert L. Wilkie was confirmed as Secretary of Veteran Affairs on July 23, 2018. Pursuant to
Fed. R. Civ. P. 25(d), Wilkie is automatically substituted for Dr. David J. Shulkin as the
defendant in all pending Veterans Affairs' cases.

promote, failure to accommodate, retaliation, harassment, and other ("Bullying"). (ECF No. 1) On the following page, Plaintiff checked race, color, gender, and disability as the reasons for the discriminatory conduct. (<u>Id.</u>) Defendant moves for dismissal or, in the alternative, for summary judgment on Plaintiff's claims.

Although not entirely clear from his Complaint, it appears that Plaintiff alleges some of the same adverse employment claims addressed in his EEO administrative case, as well as additional claims. Plaintiff has organized his Complaint by describing the alleged discriminatory conduct and, at the conclusion, listing the "Violations" (i.e. disability discrimination, harassment, etc.). The following is a list of the alleged discriminatory conduct set forth in Plaintiff's Complaint supporting his adverse employment claims, with the "violations" listed in parenthesis.

1. Plaintiff argues that he was not properly represented during the EEO administrative process. (ECF No. 41-1 at ¶ 1) (No "violations")

2. Plaintiff alleges that he wrongfully received a "fully successful" rating on his 2011 and 2012 evaluation. (<u>Id.</u> at ¶ 2) ("Violations: Equal Pay/Compensation, Harassment, Retaliation, Gender, Intimidation")

3. Plaintiff contends that he was denied the proper documentation to dispute his 2011 and 2012 annual ratings. (<u>Id.</u> at ¶ 3) ("Violations: Equal Pay/Compensation, harassment, retaliation, gender")

4. Plaintiff alleges that he was not allowed to take breaks, including lunch, without first informing three individuals; and even after discussing his need for breaks at regular intervals; he still did not receive regular lunch breaks. (<u>Id.</u> at ¶ 4) ("Violations: Disability, Harassment, Retaliation, gender")

5. Plaintiff alleges that Brown harassed him during retraining by standing behind his chair and leaning over him. Plaintiff also alleges that Brown harassed him when she questioned him regarding certain documents and accused him of not completing his work. (<u>Id.</u> at ¶ 5) ("Violations: Harassment, Retaliation, gender")

6. Plaintiff alleges that his PIV badge could not be released because of criminal charges from 2007. (<u>Id.</u> at ¶ 6) ("Violations: harassment, race/color, retaliation, gender")

7. Plaintiff alleges that he was questioned as to his whereabouts after being instructed to retrieve his PIV badge before reporting to work. (<u>Id.</u> at ¶ 7) ("Violations: harassment, retaliation, gender")

8. Plaintiff alleges that he was issued a letter of counseling for "not going through the chain of command." Plaintiff also alleges that he was wrongfully accused of sexual harassment. (<u>Id.</u> at ¶ 8) ("Violations: harassment, race/color, retaliation, gender.")[2]

(<u>Id.</u> at 6-14)

In support of his lawsuit, Plaintiff attached as an exhibit, the July 6, 2017, U.S. Equal Employment Opportunity Commission's ("EEOC") Decision (ECF No. 1-1), affirming the Administrative Judge's ("AJ") Findings of Fact and Conclusions of Law in the Discrimination Complaint of Darryl Henderson and Robert McDonald, Secretary Department of Veterans Affairs, dated December 23, 2015 (hereinafter "EEOC Opinion").[3] (ECF No. 14-1) In that case, Plaintiff alleged hostile work environment claims based on disability and reprisal for prior EEO

---

[2] The allegations regarding Plaintiff being marked tardy in January and February 2013, and Plaintiff receiving no response for a requested copy of the investigative report, were investigated and the subject of the underlying EEO administrative case but were not included in Plaintiff's Complaint.

[3] The Court will take judicial notice of the EEOC administrative decision as it is a matter of public record. <u>See</u> <u>Miller v. Redwood Toxicology Lab., Inc.</u>, 688 F.3d 928, 931 (8th Cir. 2012).

activity based on ten alleged factual incidents occurring between November 8, 2012, and June 24, 2013.  (Id. at 2-3)

I.      **Background**

Plaintiff is an African American male with diabetes, who worked for the Health Administration Service at the St. Louis VA Medical Center as a Medical Support Assistant, GS-5, starting in 2009.  (ECF No. 14-1 at 5, EEOC Opinion)  After reporting a hostile work environment in May 2013, Plaintiff was reassigned to the John Cochran Division of the St. Louis VAMC as Primary Care Support.  In September 2013, Plaintiff started working as a Program Support Assistant, GS-6, in Primary Care Service at John Cochran.  After working in that capacity for fourteen months, Plaintiff was assigned to the Jefferson Barracks Division and worked in Building 53.  (Id.)

Katonya Riddle ("Riddle"), Supervisor, Health Administration Services, GS-7, was his first level supervisor in early 2012, and she reported to Kristina McManus ("McManus"), Assistant Chief of the Health Administration Services.  (Id. at 6)  McManus reported to Geraldine Smith ("Smith"), Chief of the Health Administration Service, and Smith retired in April 2015.  (Id. at 6)

II.     **The Uncontroverted Facts Material to Motion**

The following recitation of undisputed facts giving rise to Plaintiff's claims is taken from Defendant's Statement of Uncontroverted Material Facts, the EEOC Opinion, and the undersigned's independent review of the record in the case.  The Court largely adopts the Statement of Undisputed Material Facts submitted by Defendant in support of his motion.  This statement of facts is supported by references to the Complaint and the EEOC Opinion.  Plaintiff has not disputed Defendant's statements of the facts or the EEOC Opinion and offers only

speculation, personal opinion, and legal conclusions, which are insufficient to defeat the pending motion. Although Plaintiff submitted a statement of uncontroverted material facts, Plaintiff failed to respond to or controvert the facts submitted by Defendant numbered 1-52. As a result, for purposes of this motion, Plaintiff is deemed to have admitted all of Defendant's facts which were not specifically converted. See Roe v. St. Louis Univ., 746 F.3d 874, 881 (8th Cir. 2014) (If the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), "a district court will not abuse its discretion by admitting the movant's facts."); Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not convert defendant's statement of material fact, it was deemed admitted under E.D. Mo. Local Rule 4.01(E)).

At all times relevant to this cause, Plaintiff was employed by the VA. Beginning in 2009, Plaintiff worked at the St. Louis VA Medical Center. (ECF No. 14-1 at 5) After reporting a hostile work environment to management, Plaintiff was reassigned to the John Cochran Division VA Medical Center in May 2013.

On January 17, 2013,[4] Plaintiff sought EEO counseling but when that matter was not resolved, Plaintiff filed a formal EEO complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was subjected to a harassment/hostile work environment based on his disability (diabetes) and that he suffered reprisal for EEO activity as evidenced by incidents beginning on November 8, 2012, and ending on June 24, 2013. (Id. at 2-3) On March 13, 2013, after the EEOC partially accepted the complaint for investigation and dismissed his claim regarding his November 2012 rating of record as a discrete act which was untimely filed. Plaintiff filed another amendment on April 10, 2013 and then a third amendment on July 9, 2013.

---

[4] The record shows no prior EEO activity before Plaintiff initiated contact with the EEO office on January 17, 2013. (Id. at 5)

In his EEO Complaint, Plaintiff again alleged that he was subjected to discrimination in the form of hostile work environment based on disability and reprisal for prior EEO activity on incidents occurring between November 8, 2012, and June 24, 2013. (Id. at 4) Plaintiff presented no evidence or testimony during the EEO's investigation of the complaint. (Id. at 31)

On December 11, 2013, Plaintiff timely filed a request for a hearing before an EEOC Administrative Judge ("AJ"). At the hearing, Plaintiff confirmed that his reprisal claim is based on the instant EEO complaint, but he provided no other evidence of any earlier EEO activity. (Id. at 5) Plaintiff testified that in July 2012, he advised Riddle that he had diabetes and that he provided her a doctor's note. (Id. at 6) Riddle testified that she does not recall Plaintiff telling her that he had diabetes, requiring the need for more frequent and/or consistent breaks, but she received a doctor's letter regarding his breaks with no notation indicating his disability.[5] (Id. at 12) In that letter, Plaintiff's doctor stated that Plaintiff "is under my care for his health problems and he will benefit from getting his breaks at regular intervals so that he can use this time for brief walks to improve his health to prevent complications." (Id. at 9-10) In response to Riddle's January 29, 2013, email providing him reasonable accommodation paperwork and copied to McManus and Smith, Plaintiff stated that "I am requesting that my breaks and lunch be consistent because I am a diabetic." (Id. at 28)

"When asked about the 2012 performance rating, Riddle stated that [Plaintiff] had a number of scheduling errors and in customer service he did not get along with his peers, Supervisor Riddle, and sometimes was not 'friendly' to his patients." (Id. at 7) Riddle further

---

[5] In an email to Riddle dated January 22, 2013, Plaintiff stated: "This is beginning to get real troublesome to me, I have to wait for someone to relieve me or I have to call and find person #, person #, person #, person # before I can leave. This is something I have never heard of and if it is in the employee manual I want a copy. Yes I am waiting for my relief to go on break, shortage of staff is not my problem." (Id. at 11)

testified that she was unaware of his EEO activity on January 8 or February 28, 2013, when she marked Plaintiff tardy[6] but she was aware of his EEO activity when she questioned Plaintiff about his extended absence from his work station on February 14, 2013. (Id. at 2, 30)  On February 14, 2103, after Plaintiff picked up his renewed PIV badge, Riddle testified that she questioned Plaintiff about where he had been all morning. (Id. at 18)  Riddle testified that no disciplinary action resulted from Plaintiff's absence. (Id.)  Riddle testified that she reports tardiness with every employee she supervises when an employee is one to seven minutes late. (Id. at 14)  Riddle further testified that she became aware of Plaintiff's EEO complaint when the EEO office contacted her during its investigation. (Id. at 20)

Andrea Hoopes ("Hoopes"), a supervisory human resources specialist, testified that on February 6, 2013, she told Plaintiff that his PIV badge could not be renewed because of unresolved criminal charges and met with Plaintiff in a common area with other people for safety reasons. (Id. at 17)  Hoopes testified that Plaintiff was very accusatory about what was being done.  Hoopes testified that a mistake had been made and apologized for the mistake. (Id.)  Hoopes testified that she was unaware of Plaintiff's EEO activity on February 6, 2013 when he discussed issues with his PIV badge with her, and she was not aware of his disability. (Id. at 7, 28)

Smith testified that on April 8, 2013, she issued a letter of counseling to Plaintiff for going outside the chain of command with inappropriate emails and comments therein. (Id. at 18)  The AJ found that Plaintiff "has failed to show that his counseling was issued because of his disability and EEO activity, and not because he continuously copied inappropriate individual on emails after repeatedly being instructed not to.  [Plaintiff] also failed to show that any other

---

[6] Plaintiff testified that he was tardy about one minute on January 18, 2013 and about three minutes on February 28, 2013. (Id. at 13)

employees behaved in a similar manner and were not also disciplined." (Id. at 36-37) The letter indicated "that it is the procedure … that staff follow their internal chain of command and are courteous and respectful to their managers" and in closing "if [Plaintiff] did not show significant improvement in his behavior she may recommend further disciplinary actions up to and including removal from Federal Service." (Id.) Plaintiff acknowledged that other individuals have been disciplined for going outside of the chain of command. (Id. at 20) Smith testified via affidavit that she became aware of Plaintiff's complaint when notified on October 21, 2013, and his diabetes from Plaintiff's email regarding his time away from his desk. (Id. at 2, 6, 29)

McManus testified that she became aware of Plaintiff's EEO complaint when notified by the EEO Office on January 24, 2013, and she learned of Plaintiff's disability from his January 29, 2013, email requesting his breaks and lunches be scheduled at consistent times to accommodate his diabetes. (Id. at 3, 20-21, 30, 35) Brown testified that she was not aware of Plaintiff's EEO Complaint until notified of the investigation in October 2103, and she was not aware of Plaintiff's disability. (Id.) Keith Repko, the Associate Medical Center Director, testified via affidavit that he became aware of Plaintiff's EEO Complaint in April 2013 but he was not aware of Plaintiff's disability. (Id. at 7, 14) After reviewing Plaintiff's attendance record, Repko found that every time Plaintiff had been charged as tardy, Plaintiff had been over the threshold of what the agency considers tardy. (Id.)

On March 17, 2014, the AJ issued an Order summarizing the Initial Conference, stating that there was no discovery in this matter as none had been requested, and affirming the dismissal of Plaintiff's performance rating claim for untimely counselor contact but the AJ ruled the issue could be addressed as background to Plaintiff's harassment claim. The AJ denied the agency's motion for summary judgment finding material facts in dispute.

On December 23, 2015, the AJ issued the EEOC Opinion, including Findings of Fact and Conclusions of Law, on Plaintiff's discrimination complaint, finding Plaintiff failed to establish discrimination based on disability or retaliation. (ECF No. 14-1 at 1, 37)  The AJ's EEOC Opinion addressed Plaintiff's allegations that he was discriminated against based on his disability, failed to receive an accommodation, and retaliated against for prior EEO activity when the following events occurred:

1. On November 8, 2012, Riddle issued Plaintiff a rating of fully successful on his annual rating of record;

2. On December 10, 2012, Plaintiff was denied documentation through which he would have disputed his fully successful performance rating;

3. On January 9, 2013, Plaintiff was allegedly told that he was not allowed to take breaks unless he first informed three other individuals;

4. On January 18 and February 28, 2013, Riddle marked Plaintiff as tardy/late in the electronic pay system;

5. On January 25, 2013, no action was taken by Smith when Theresa Brown ("Brown"), a coworker, allegedly acted in an insulting, disrespectful and intimidating manner toward Plaintiff;

6. On January 31, 2013, Brown was once again rude to Plaintiff and accused him of not doing his work and questioned him about some missing documents;

7. Because of old false criminal charges in 2007, on February 6, 2013, Plaintiff's PIV badge could not be released, and he had to clear the issue with the FBI before he could obtain his badge;

8.  On February 14, 2013, after instructing Plaintiff to retrieve his PIV badge from another campus before reporting to work, Riddle questioned Plaintiff regarding his whereabouts that morning;

9.  On April 8, 2013, Smith issued Plaintiff a letter of counseling; and

10.  On June 7 and 24, 2013, management did not provide Plaintiff a copy of the investigative report concerning an alleged privacy violation as requested.

(Id. at 6-21)

The AJ found that Plaintiff presented no evidence of any connection between his alleged protected status and the conduct he alleged to be discriminatory harassment and no evidence of any connection between his EEO activity and the conduct he alleged to be retaliation.  (Id. at 22-23, 29-37)  The AJ also found that

> Supervisor Riddle testified that [Plaintiff] did not talk to her about his diabetes. Even when he gave her the doctor's note about his breaks, he did not state that he had diabetes.  Similarly, Hoopes, Brown, and Repko all testified not know about [Plaintiff's] diabetes.  McManus, Smith, and Riddle became aware about [Plaintiff's] diabetes after [Plaintiff] response to the January 29, 2013 email. Moreover, a review of the doctor's statement dated January 3, 2103 does not refer to diabetes.

(Id. at 28)

On January 5, 2016, the VA, Office of Employment Discrimination Complaint Adjudication, sent the Final Order to Plaintiff, including a statement explaining his right of appeal and his right to file a civil action.  (ECF No. 21-1)

On July 6, 2017, the EEOC entered its Decision, affirming the AJ's December 23, 2015 EEOC Opinion, finding that substantial evidence supports the AJ's determination that Plaintiff had not proven discrimination by the VA.  (ECF No. 1-1)  In that Decision, a provision explained

Plaintiff's right to file a civil lawsuit within ninety calendar days from receipt of the final EEOC decision.  (Id.)

## III.    Standards of Review

As a threshold matter, *pro se* pleadings are to be liberally construed and are held to less stringent standards that those drafted by an attorney.  Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).  This means "that if the essence of an allegation is discernible … then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) (quoted case omitted).

The Court must determine whether to address Defendant's motion as a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) or a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  "If matters outside the pleadings 'are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (quoting Fed.R.Civ.P. 12(d)).  In support of his motion, Defendant provides the Court with an exhibit, the United States Equal Employment Opportunity Commission's December 23, 2015, Findings of Fact and Conclusions of Law (ECF No. 14-1, Exh. A)  Although this document is embraced by the pleadings, in an abundance of caution, the Court will treat Defendant's motion as a motion for summary judgment filed pursuant to Rule 56.[7]

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all

---

[7] It has been established, however, that public records can be considered without such a conversion becoming necessary.  Administrative records have consistently been deemed public records and have been considered on motions to dismiss.  See, e.g., Faibisch v. Univ. of Minnesota, 304 F.3d 797, 802-03 (8th Cir. 2002).

of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material facts exists. Fed.R.Civ.P. 56(c). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp. 475 U.S. 574, 586 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

If the nonmoving party fails to properly address an assertion of fact made by the movant, the Federal Rules of Civil Procedure permit the court to consider the fact undisputed.

Fed.R.Civ.P. 56(e)(2). The Local Rules of this Court, however, require it. Under Local Rule 4.01(E), moving parties must include a statement of uncontroverted material facts with their memorandum, with citations to the record if the fact(s) are established by the record.

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D.Mo.L.R. 4.01(E). Accordingly, any admitted statement of fact that Plaintiff did not specifically convert in response to Defendant's motion will be deemed admitted.

Defendant has, in accordance with the Court's Local Rule, submitted a Statement of Uncontroverted Material Facts, which is supported by references to the record. Although Plaintiff filed a response to Defendant's Statement, he does not contravene any facts and fails to support his denials with any specific references to admissible evidence in the record. Instead, Plaintiff recites the allegations in his Complaint and fails to offer any evidence in support of his discrimination claims. Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7-4.01 of this Court's Local Rules, Defendant's facts are therefore deemed admitted. Also, Plaintiff does not cite to any record evidence to support his assertions in his Statement of Uncontroverted Material Facts (ECF No. 23). These bare assertions are insufficient to establish a genuine dispute of fact. "To establish a genuine factual issue, a party 'may not merely point to unsupported self-serving allegations.' Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008) (internal quotation and citation omitted). 'Instead, the [party] must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.' Id. (internal quotation and citation omitted)." Residential Funding Co., LLC v. Terrace Mortgage

Co., 725 F.3d 910, 915 (8th Cir. 2013). None of Plaintiff's statements are sworn. Banks v. Deere, 829 F.3d 661, 667-68 (8th Cir. 2016). Because Plaintiff has failed to offer any evidence in support of his position and he has failed to contravene Defendant's material facts, the facts are considered undisputed. See Odom v. Tripp, 575 F. Supp. 1491, 1493 (E.D. Mo. 1983).

## IV.  **Discussion**

As an initial matter, although Plaintiff listed "failure to promote" as part of the nature of the instant case and race, color, and gender as a basis of discrimination in his form Complaint filed in this action (ECF No. 1 at 4-5), he failed to exhaust his administrative remedies. A review of the underlying administrative record shows only allegations of a hostile work environment based on disability, failure to accommodate, and reprisal for prior EEO activity, occurring between November 8, 2012, and June 24, 2013. (ECF No. 14-1 at 2-3)

"Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." Boyd v. BJC Health Sys., 2018 WL 620484, at *3 (E.D. Mo. Jan. 29, 2018). Thus, Plaintiff failed to exhaust his administrative remedies as to his failure to promote claim because he only complained of disability discrimination, failure to accommodate,[8] and retaliation in his EEO Complaint and during the EEO administrative process. "While a subsequent federal lawsuit need not mirror the administrative charges, the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charges of discrimination. Allegations outside the scope of the EEOC charge circumscribe the

---

[8] The AJ found in the EEOC Opinion that "[a]lthough [Plaintiff] did not state that he was alleging a failure to accommodate, he has alleged that management prevented him from taking breaks according to his doctor's instructions due to his disability which constitutes a claim of a failure to accommodate" and addressed this claim on the merits. (ECF No. 14-1 at 23-24 and 28-29)

agency's investigatory and conciliatory role, and further fail to provide the agency notice of the charge." Harris v. Potter, 2007 WL 892429, at *4 (E.D. Mo. Mar. 22, 2007) (internal quotation omitted).

There is nothing in the administrative case to put Defendant on notice that Plaintiff was also alleging race, color, and gender as a basis for discrimination. "Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer." McAlister v. Sec'y of Dept. of Health and Human Servs., 900 F.2d 157, 158 (8th Cir. 1990). Failure to exhaust such remedies is fatal to claims of federal employment discrimination. Id. It thus appears that Plaintiff failed to exhaust these claims. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) (the scope of a civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination but it cannot be broader). Defendant is therefore entitled to summary judgment to the extent Plaintiff contends he was subjected to race, color, and gender discrimination and discriminated against by Defendant's failure to promote.

Likewise, Plaintiff's allegations concerning the processing and litigating of the administrative complaint (ECF No. 1 at ¶ 1) and a 2016 incident while Brown retrained him (Id. at ¶ 5) were also not raised in the administrative proceeding initiated by Plaintiff. Plaintiff has failed to present to Defendant these other claims of discrimination raised in his Complaint, so Plaintiff has failed to establish a genuine issue of material fact as to those claims. Accordingly, the Court will grant summary judgment as to these claims because Plaintiff failed to exhaust these claims by presenting them for administrative review.

Regarding Plaintiff's properly exhausted claims, absent direct evidence of discrimination, the Court must apply the familiar <u>McDonnell Douglas</u>[9] burden-shifting analysis when analyzing Plaintiff's claims of employment discrimination.  <u>Grant v. City of Blytheville, Ark.</u>, 841 F.3d 767, 773 (8th Cir. 2016).  Under this framework, Plaintiff must first establish a prima facie case of discrimination.  If Plaintiff meets this burden, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  If Defendant meets this burden of production, Plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by Defendant are not its true reasons, but are pretext for discrimination.  <u>Id.</u> at 773.  At all times, Plaintiff bears the ultimate burden of proving that he was unlawfully discriminated against.  <u>Rose-Maston v. NME Hosp.</u>, 133 F.3d 1104, 1107-08 (8th Cir. 1998).

### A. <u>Disability Discrimination</u>

Plaintiff, a federal employee, alleges disability discrimination.  The Rehabilitation Act is the exclusive remedy for a federal employee alleging disability-based discrimination.  <u>Ellis v. Donahoe</u>, 2014 WL 7335161, at *1 n.2 (E.D. Mo. Dec. 19, 2014).  "The Rehabilitation Act provides, 'No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, … be subjected to discrimination … under any program or activity conducted by … the [VA].'"  <u>Peeples v. Potter</u>, 354 F.3d 761, 765 (8th Cir. 2004) (quoting 29 U.S.C. § 794(a)) (all but last alterations in original).  "Discrimination under … the Rehabilitation Act encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability."  <u>Withers v. Johnson</u>, 763 F.3d 998, 1003 (8th Cir. 2014).  "The former requires proof of discriminatory intent, while the latter

---

[9] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

does not." Id.  An adverse employment action under the Rehabilitation Act is a "tangible change in working conditions that produces a material employment disadvantage."  Dick v. Dickinson State Univ., 826 F.3d 1054, 1060 (8th Cir. 2016).  These include such actions as "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects."  Id. Conversely, job reassignment without a pay or benefit reduction is insufficient to constitute an adverse employment action.  Id.

### 1. **Disparate Treatment**

In this case, Plaintiff's disability discrimination claims can only survive summary judgment if there is a genuine issue of material fact as to whether Plaintiff's disability was a contributing factor involving the instances cited by Plaintiff as evidence of discrimination.  None of the incidents cited by Plaintiff as evidence of discrimination rises to an adverse employment action.  Likewise, Plaintiff has failed to allege a causal connection that he was discriminated against solely because of his diabetes.  Indeed, the record shows that neither Brown nor Hoopes was aware of Plaintiff's diabetes and that McManus, Riddle, and Smith only became aware of Plaintiff's diabetes as of January 29, 2013, from his email.

As to his "fully successful" rating on his 2011 and 2012 evaluation, Riddle was not aware of his diabetes until after completing Plaintiff's performance appraisal.  Plaintiff received the same performance rating given by a previous supervisor but when making his 2012 appraisal, Riddle was aware of Plaintiff making a number of scheduling errors, not getting along with his peers, sometimes not being friendly to his patients, and instances of tardiness.  (ECF No. 14-1 at 2, 7, 8-9, 31)  This fully successful appraisal predated anyone knowing about Plaintiff's disability.  Further, a poor performance rating does not constitute an adverse employment action provided it has no tangible effect upon the recipient's employment.  Goodrich v. Mo. Dep't of

Soc. Servs., Family Support Div., 2014 WL 793772, at *5 (E.D. Mo. Feb. 27, 2014).

Significantly, Plaintiff has not alleged that the "fully successful" rating resulted in an adverse

employment action.

As to the alleged denial of certain documents which allegedly dispute his "fully

successful" rating, this incident predated anyone knowing about Plaintiff's disability and would

not constitute an adverse employment action. (Id. at 2, 8-9, 31)

As to the alleged requirement to notify three other employees before taking breaks,

Plaintiff stated in an email that shortage of staff is not his problem, and on the instant record,

Defendant has provided evidence in the form of Riddle's affidavit that Plaintiff did not have to

inform three people before taking a break, but Plaintiff had to find someone to cover his desk and

answer phone calls. In an email, Riddle explained to Plaintiff his break times and advised

Plaintiff "that if no one is at his desk at those appointed times he is to pick up the telephone and

call me …, Theresa Brown …, or Shantella … or pager…. This will allow one of us to find

clinic coverage for his breaks." (Id. at 10) The undisputed record shows that as soon as

management became aware of his diabetes, the issues with Plaintiff's breaks did not reoccur.

(Id. at 2, 10-13, 32) This incident predated anyone knowing about Plaintiff's diabetes, and

Riddle testified that Plaintiff was never required to call three people before taking a break, he

had to wait to be covered by another employee for coverage. Further, this action, if true, does

not amount to an adverse employment action. "A mere inconvenience without any decrease in

title, salary, or benefits' or that results in minor changes in working conditions does not meet this

standard" of an adverse employment action. Williams v. True Mfg., 2015 WL 4546618, at *3

(E.D. Mo. July 28, 2015).

As to Plaintiff being marked tardy on two occasions, the record shows Plaintiff was in

fact tardy and admitted to being so. Further, Riddle testified that she reports tardiness with every employee she supervises when an employee is one to seven minutes late.

As to no disciplinary action being taken against Brown for allegedly insulting and intimidating Plaintiff and then being rude to Plaintiff and accusing him of not doing his work, these incidents pre-date her knowledge of Plaintiff's diabetes.

As to the incident involving Plaintiff's PIV badge renewal, Hoopes in her affidavit averred that she was unaware of Plaintiff's disability on February 6, 2013, when he discussed issues with his PIV badge with her. Hoopes testified that a mistake had been made and apologized for the mistake.

As to Riddle questioning Plaintiff about his extended absence from his work station on February 14, 2013, Riddle did not discipline Plaintiff.

As to Smith issuing a letter of counseling for going outside the chain of command with inappropriate emails and comments therein, Plaintiff testified that other individuals had been disciplined for going outside of the chain of command. This was not an adverse action.

As to the management's alleged failure to respond to Plaintiff's request for investigative report related to a data breach, many employees personal information was also compromised.

In his Motion for Rebuttal to Statement of Uncontroverted Material Facts (ECF No. 23), Plaintiff disputes the actions of Defendant's management without any evidence that the actions are related to his disability. Plaintiff does not cite to any record evidence to support his assertions or substantiate his allegations with sufficient probative evidence. These bare assertions are insufficient to establish a genuine issue of fact. Anda, 517 F.3d at 531. The Court also notes that Plaintiff's Statement of Material Facts is not supported by any citation to record evidence. On this record, the Court cannot find that Plaintiff has established a prima facie case.

"[A] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture or fantasy." Reed v. City of St. Charles, Mo., 561 F.3d 788, 791-92 (8th Cir. 2009) (citation and quotation marks omitted). Plaintiff offers only speculation that Defendant's actions were on account of his disability. As discussed above, Plaintiff has not proven any adverse employment action needed to maintain this claim-- he has not shown that he suffered a material change in employment status.

Plaintiff offers only speculation that Defendant staff's actions were on account of his disability. To survive a motion for summary judgment, however, Plaintiff must substantiate his allegations with sufficient probative evidence that would support a finding in his favor "based on more than mere speculation, conjecture, or fantasy." Clay v. Credit Bureau Enters., Inc. 754 F.3d 535, 539 (8th Cir. 2014) (internal quotation marks and citations omitted). Because Plaintiff does not support his allegations with any probative evidence and relies only on speculation to show that the alleged discriminatory conduce was based on his disability, he has failed to establish a prima facie case of hostile work environment. Defendant is therefore entitled to summary judgment on this claim. Id. at 541.

### 2) **Failure to Accommodate**

Plaintiff also makes a failure to accommodate claim. Under the Americans with Disabilities Act, to state a claim for failure to accommodate, the plaintiff must allege that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and 4) the employee could have been reasonably

accommodated bur for the employer's lack of good faith."  E.E.O.C. v. Prod Fabricators, Inc., 763 F.3d 963, 971 (8th Cir. 2014).

The undisputed record shows that before January 25, 2013, Defendant's management was unaware of Plaintiff's diabetes because Plaintiff never shared his diabetes' diagnosis and he failed to seek accommodations for his diabetes until that time.  Riddle testified that she did not recall Plaintiff telling her he had diabetes necessitating more frequent and/or consistent breaks but she received a doctor's letter regarding his breaks with no notation indicating his disability. (ECF No. 14-1 at 12)  In that letter, Plaintiff's doctor stated that Plaintiff "is under my care for his health problems and he will benefit from getting his breaks at regular intervals so that he can use this time for brief walks to improve his health to prevent complications."  (Id. at 9-10)  In response to Riddle's January 29, 2013, email providing him reasonable accommodation paperwork and copied to McManus and Smith, Plaintiff stated that "I am requesting that my breaks and lunch be consistent because I am a diabetic."  (Id. at 28)  Similarly, McManus and Smith became aware of Plaintiff's diabetes after the January 29, 2013, email, and Hoopes, Brown, and Repko all testified that they did not know about Plaintiff's diabetes.

Defendant has shown there are no genuine issues of material fact in dispute, and has established as a matter of law that Plaintiff fails to show a failure to accommodate on the part of Defendant.

### B.  Retaliation

Plaintiff next alleges that Defendant unlawfully discriminated against him in his employment in retaliation for his EEO activity.  Plaintiff's seeking EEO counseling constituted protected activity for the purposes of his retaliation claim.  The undisputed evidence before the Court shows Plaintiff first engaged in a protected activity by seeking

counseling on January 17, 2013.  At the hearing, Plaintiff confirmed that his reprisal claim is based on the instant EEO complaint and provided no other evidence of any prior EEO activity.  (ECF No. 14-1 at 5)  To the extent Plaintiff claims that he was denied advancement in retaliation for engaging in protected conduct, the undisputed evidence shows that Plaintiff never sought or applied for any promotion or advancement during the relevant time period.  Nor has Plaintiff identified any advancement or opportunities allegedly denied him.  Plaintiff therefore has failed to establish a prima facie case that he was denied advancement in retaliation for engaging in protected conduct.  See Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996).

Title VII prohibits employers, including the federal government, from retaliating against employees for engaging in activity that is protected under Title VII.  42 U.S.C. §§ 2000e-3(a) and 2000e-16(a).  A claim of retaliation pursuant to Title VII is not based upon discrimination, but instead upon "an employer's action to punish an employee who makes a claim of discrimination."  Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1037 (8th Cir. 2005).  Plaintiff "first must demonstrate a prima facie case of retaliation to survive summary judgment."  See Jackson v. UPS, Inc., 643 F.3d 1081, 1088 (8th Cir. 2011).  To meet this burden, Plaintiff must show that 1) he engaged in a protected activity; 2) Defendant subsequently took an "adverse employment action" against him; and 3) there was a causal connection between the protected activity and the adverse employment action.  Id.  The anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).

The Eighth Circuit has held that to be materially adverse, retaliation cannot be trivial; it must produce some 'injury of harm" and found that commencing performance evaluations, or

sending a critical letter that threatened "appropriate disciplinary action," or falsely reporting poor performance, or "lack of mentoring and supervision" were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee. Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 644 (8th Cir. 2009).

If Plaintiff cannot show a causal link between his protected conduct and the adverse employment action, summary judgment is proper.  Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004).  Here, Defendant argues, and the undisputed evidence shows, that there was no adverse employment action and no causal connection exists between the filing and pendency of Plaintiff's EEO Complaint, and the alleged adverse employment action. "An adverse employment action is defined as tangible changes in working conditions that produce a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013). "However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action."  Id.; see also Wedow v. City of Kansas City, Mo., 442 F.3d 661, 671 (8th Cir. 2006) ("Mere inconvenience without any decrease in title, salary, or benefits" or "that results only in minor working conditions does not meet this standard.").

The November 8, 2012, rating of fully successful on Plaintiff's annual rating record occurred before Plaintiff sought EEO counseling so he had not engaged in any protected activity at that time.  Moreover, "[a] poor performance rating does not in itself

constitute an adverse employment action because it has not tangible effect upon the recipient's employment." Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000). "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Id. Plaintiff has failed to present any evidence "tending to show the evaluation was relied upon to effect any material change in the terms or conditions of his employment." Hughes v. Stottlemyre, 454 F.3d 791, 796-97 (8th Cir. 2006). Indeed, Plaintiff has not even alleged that the "fully successful" rating resulted in an adverse employment action.

Next, the fact that Plaintiff could not take breaks without informing three other persons does not amount to a materially adverse employment action as it did not result in a change in his employment status. "A mere inconvenience without any decrease in title, salary, or benefits or that results in minor changes in working conditions does not meet this standard." Williams v. True Mfg., 2015 WL 4546618, at *3 (E.D. Mo. July 28, 2015).

Likewise, Plaintiff cannot establish that he suffered an adverse employment action arising from the other challenged conduct – being marked tardy, not taking action against Brown, being accused of not doing his work, his PIV badge not being released, being questioned about his location, receiving a letter of counseling, and not receiving a copy of the investigative report – because these incidents did not result in a material change in the terms or conditions of his employment. Plaintiff has not produced any evidence to indicate Defendant's employment actions were retaliatory in nature. "A party's unsupported self-serving allegation that her employer's decision was based on

retaliation does not establish a genuine issue of material fact."  Jackson, 643 F.3d at 1088.

Plaintiff offers only speculation that the Defendant's actions were in retaliation for his EEO activity.  Plaintiff has failed to present any evidence showing that he suffered an adverse employment action and therefore, Defendant is entitled to summary judgment on his retaliation claim.

### C.  **Hostile Work Environment**

Plaintiff claims that he was subjected to a hostile work environment based on disability and/or in retaliation of his EEO activity.  "Hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Jackman, 728 F.3d at 805 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  To prevail on his claim of hostile work environment based on his disability or retaliation for his EEO activity, Plaintiff must show that:  1) he is a member of a class protected by the statute; 2) he was subject to unwelcome disability or retaliation for his EEO activity-based harassment; 3) the hostile work environment occurred because of his membership in the protected class; and 4) the hostile work environment affected a term, condition, or privilege of employment.  See Banks, 829 F.3d at 667.  If any essential element of this prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial, the Court must grant summary judgment to Defendant.  Grant, 841 F.3d at 773.

"The standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment."  Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016).  When evaluating a hostile environment, the

court should look at the totality of the circumstances, "whether such conduct was physically threatening or humiliating as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Id. at 1057. "A plaintiff must establish that discriminatory intimidation, ridicule, and insult permeated the workplace." Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 953 (8th Cir. 2011). "Title VII does not, however, create a cause of action for all unpleasant or abusive behavior in the workplace." Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997).

In sum, the other challenged conduct includes Plaintiff receiving a rating of fully successful, Plaintiff being marked tardy, Defendant not taking action against Brown, Plaintiff being accused of not doing his work, his PIV badge not being released, Plaintiff being questioned about his location, Plaintiff receiving a letter of counseling, and Plaintiff not receiving a copy of the investigative report. "'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" Blomker, 8 31 F.3d at 1057 (quoting Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999)). "[M]erely rude or unpleasant" conduct [is] insufficient "to affect the terms and conditions of employment." Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 420 (8th Cir. 2010)

The Eighth Circuit has required much more severe and pervasive conduct that that alleged in this case. Ottman v. City of Independence, 341 F.3d 751, 760 (8th Cir. 2003) (reversing the denial of a summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, of not daily, basis."). There is no evidence that any disability-based or retaliatory harassment rose to such level that it poisoned the work environment.

The Court will assume, without deciding, that Plaintiff has established the first two prongs of this claim. Nonetheless, Plaintiff has not advanced any facts from which the Court can find a basis to establish the third prong—that the harassment resulted from his membership in a protected class. To determine whether the harassment affected a term, condition, or privilege of a plaintiff's employment, the court must consider the totality of the circumstances, including the severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance. Sellers v. Deere & Co., 791 F.3d 938, 945 (8th Cir. 2015). Nor has Plaintiff proven that the harassment was severe enough to affect the terms, conditions, and privileges of his employment. "The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." Moses v. Dassault Falcon Jet-Wilmington Corp, 894 F.3d 911, 922 (8th Cir. 2018). Here, the complained-of conduct, while inappropriate and sometimes embarrassing for Plaintiff, cannot be said to have affected a term, condition, or privilege of employment.

Here, Plaintiff offers no evidence to substantiate a claim of hostile work environment. Plaintiff offers only speculation that Defendant's failure to act was on account of his disability and/or in retaliation of his EEO activity. To survive a motion for summary judgment, however, Plaintiff must substantiate his allegations with sufficient probative evidence that would support a finding in his favor "based on more than mere speculation, conjecture, or fantasy." Clay v. Credit Bureau Enters., Inc., 754 F.3d 535, 539 (8th Cir. 2014) (internal quotation marks and citations omitted). Because Plaintiff does not support his allegations with any probative evidence and relies only on speculation to show that the alleged harassment was based on his disability and/or in retaliation of his EEO activity, he has failed to establish a prima facie case of

hostile work environment.  Accordingly, Defendant is entitled to summary judgment on

Plaintiff's claims of hostile work environment.  Id. at 541.

### D. Conclusion

Based on the foregoing analysis, the record clearly establishes that there are no genuine

disputes as to any material facts.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or, Alternatively, for

Summary Judgment (ECF No. 11) is **GRANTED**, and summary judgment is entered in favor of

Defendant Robert L. Wilkie on Plaintiff' Darryl Lee Henderson's Complaint.

An appropriate Judgment is entered herewith.

Dated this 5th day of March, 2019.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE